UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TP-LINK SYSTEMS INC., | Case No.2:25-CV-57 JCM (BNW) |
| Plaintiff(s), | |
| v. | ORDER |
| SHENZHEN CUDY TECHNOLOGY CO., LTD, | |
| Defendant(s). | |

Presently before the court is plaintiff TP-Link Systems, Inc.'s motion for a preliminary injunction. (ECF No. 6). Defendant Shenzhen Cudy Technology Co., Ltd. ("Cudy") filed a response (ECF No. 29), to which TP-Link replied (ECF No. 37). For the reasons explained below, the court DENIES the motion to enjoin defendant.

Also before the court is Cudy's unopposed motion to deem four volumes of the appendix to Cudy's opposition timely filed. (ECF No. 34). Pursuant to LR IC 3-1(c), the court GRANTS the motion.

**I.     Background**

TP-Link is a consumer electronics company that manufactures and sells wireless network equipment. (ECF No. 6). Cudy is a competing manufacturer founded by former TP-Link executives. (*Id*.). TP-Link filed the instant lawsuit alleging infringement and unfair competition under the Lanham Act and related common law claims. (ECF No. 44). It asserts trade dress rights in the visual design of one of products and claims Cudy is selling confusing similar wireless networking products. (*Id*.). TP-Link now moves for a preliminary injunction to enjoin Cudy from making or selling the contested products in the United States.

**II.     Legal Standard**

Federal Rule of Civil Procedure 65 governs preliminary injunctions. Fed. R. Civ. P. 65(a). Preliminary injunctions are extraordinary remedies meant to "preserve the status quo" and "prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

The court considers the following elements in determining whether to grant preliminary injunctive relief: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winters v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994).

The movant must satisfy all four elements; however, "a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This "sliding scale" approach dictates that when the balance of hardships weighs heavily in the movant's favor, he only needs to demonstrate "serious questions going to the merits." *Id.* at 1135.

**III.    Discussion**

    A.  Likelihood of success on the merits

To prevail on a trade dress infringement claim, a plaintiff must show that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and the defendant's products. *See Art Attacks Ink, LLC v. MGA Ent. Inc*., 581 F.3d 1138 (9th Cir. 2009). TP-Link cannot prove the asserted trade dress is nonfunctional, and therefore has not demonstrated a likelihood of success on the merits.

    *1.  Functionality of the trade dress*

For a product's design to be protected under trademark law, the design must be nonfunctional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc*., 532 U.S. 23 (2001). A product feature is functional when it is essential to its use or when it affects the cost or quality of the device. *Id*. at *33; (citing *Qualitex Co. v. Jacobson Prods. Co*., 514 U.S. 159 (1995). There are two types

1    of trade dress functionality: utilitarian functionality (based on how the product works), and
2    aesthetic functionality (based on how the product looks).  *Blumenthal Distrib., Inc. v. Herman*
3    *Miller, Inc*., 963 F.3d 859, 865 (9th Cir. 2020).
4          The court first considers whether a product has utilitarian functionality with four factors:
5    (1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available,
6    (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular
7    design results from a comparatively simple or inexpensive method of manufacture.  *Disc Golf*
8    *Ass'n, Inc. v. Champion Discs, Inc*., 158 F.3d 1002 (9th Cir. 1998).  The burden of proving
9    functionality rests on the party asserting trade dress protection.  *See* 15 U.S.C §1125(a)(3).
10         i.   Utilitarian functionality
11         Federal courts in this circuit have found that trade dress features have utilitarian advantages
12   when they affect the "cost or quality" of the product or the features are "the actual benefit that the
13   consumer wishes to purchase, as distinguished from an assurance that the particular entity made,
14   sponsored, or endorsed a product." *Leatherman Tool Group v. Cooper Indus., Inc*., 199 F.3d 1009,
15   1011–12 (9th Cir.1999).
16         Thus, the more a product's design makes an item useful to the consumer, the more it
17   suggests functionality.  *Kids' Town at the Falls LLC v. City of Rexburg*, 570 F. Supp. 3d 911 (D.
18   Idaho 2021).  A product feature need only have *some* utilitarian advantage to be considered
19   functional.  *See Disc Golf*, 158 F.3d at 1007-8 (citing *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc*.,
20   4 F.3d 819, 823 (9th Cir. 1993)) (stating that the court should consider whether the design "yields
21   *a* utilitarian advantage" (emphasis added)).
22         TP Link argues the asserted Archer trade dress does not affect the products' technical
23   performance and is comprised of solely aesthetic design choices.  ECF No. 6 at 11; Angulo Decl.
24   at ¶ 16.  Side-by-side images of the contested products are reproduced below.



As a threshold matter, the court cannot endorse the notion that the contested product design wholly lacks a utilitarian advantage. TP-Link describes the Archer router design as a "relatively flat" black casing, a "gridded top surface along with a shiny polished black surface," and "raised surface segments that intersect at sharp angles forming triangles and other distinct geometric shapes." (ECF No. 6 at 1). "[T]o establish nonfunctionality the party [who bears] the burden must demonstrate that the product feature serves *no purpose* other than identification." *Disc Golf*, 158 F.3d at 1007) (emphasis in original). TP-Link has not done so.

A product's outward appearance that reflects or enhances its mechanical utility is not eligible for trade dress protection. *Leatherman*, 199 F.3d at 1013. The identified "gridded top surface" on the Archer router appears to the court to do just that. ECF No. 6 at 1. It is understood even outside the wireless technology industry that venting appears in electronic products to manage airflow and prevent overheating—both inherently functional advantages.[1] The Archer gridded surface seemingly serves the same utilitarian purpose and is thus indicative of functionality. *Disc Golf*, 158 F.3d at 1007.

Moreover, there is strong evidence of functionality when the seller advertises the utilitarian advantages of a particular feature. *Id*. at 1009. TP-Link's online advertisement for its Archer 3000

---

[1] *See* Chen Decl. ¶ 9; *Google LLC v. EcoFactor, Inc.*, 602 F. Supp. 3d 1265 (N.D. Cal. 2022) (supporting the general principle that venting is essential in electronic products to regulate temperature); *Saf-Gard Prods., Inc. v. Serv. Parts, Inc.*, 370 F. Supp. 257 (D. Ariz. 1974), aff'd, 532 F.2d 1266 (9th Cir. 1976) (providing detailed description of patented cooling system for engines); *Coleman Co. v. Holly Mfg. Co.*, 233 F.2d 71 (9th Cir. 1956) (discussing the application of venting mechanisms in preventing overheating in automative cooling systems).

AX55 product model indeed touts the "Improved Cooling Design" of the asserted Archer trade dress and mimics airflow through the black gridded surface.[2] It is apparent to the court that the advertisement acknowledges and highlights the utilitarian aspect of the design.

The court also considers the availability of alternative designs in the marketplace in its analysis. *Disc Golf*, 158 F.3d at 1008; *See also* McCarthy, § 7:75 at 7–156 (the availability of alternative designs by itself is insufficient to prove nonfunctionality; there must be a sufficient number of alternative designs such that providing trademark protection to one design would not hinder competition). Here, TP-Link provides only a list of other Cudy router designs. This is insufficient. *Disc Golf*, 158 F.3d at 1009 ("[plaintiff] has provided no sales data for alternative design and no information pertaining to market share of any particular design.").

The functionality doctrine exists to promote competitive imitation of utilitarian features. *Qualitex*, 514 U.S. at 164; *see also Leatherman*, 199 F.3d at 1012-1013 (observing the issues when alleging trade dress rights in product configuration as opposed to packaging). The gridded feature appears in not only the parties' products, but in a number of wireless routers on the market.[3] The court struggles to conclude this feature in the Archer router is solely a design choice intended for TP-Link brand identification rather than overall product performance and efficiency. *TrafFix*, 532 U.S. at 32-33.

Indeed, "functional elements that are separately unprotectable can be protected together as part of a trade dress," but the inquiry then must focus on whether a distinctive visual impression has been created. *Seirus Innovative Accessories, Inc. v. Gordini U.S.A. Inc.*, 849 F. Supp. 2d 963 (S.D. Cal. 2012) (quoting *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1259 (9th Cir.2001)). Given the dominating market presence of visually similar products,[4] the court is

---

[2] ECF No. 29, Ex. 34. The advertisement highlights the "refined case design" (referencing the black gridded casing) to "cool the WiFi 6 system and enable your network to stay at top speed." TP-Link, Archer AX 55 Model, https://www.tp-link.com/us/home-networking/wifi-router/archer-ax55/#overview (last visited May 9, 2025).

[3] Collection of "wireless router" Google image search results showing third-party routers with similar black casing and gridded surface features, *Google Images*, https://tinyurl.com/r539cske (last visited May 9, 2025).

[4] TP-Link asserts trade dress rights in "a number of distinct elements, including an all-black coloring, a relatively flat router casing which has a combination of a gridded top surface

1  persuaded that the asserted trade dress lacks necessary distinctiveness to overcome this hurdle.
2  *Disc Golf*, 158 F.3d at 1007.

3  The court finds that the asserted trade dress has at least one utilitarian advantage in the
4  product design that is advertised, such that TP-Link has failed to meet its burden of proving non-
5  functionality.  *See* 15 U.S.C §1125(a)(3).  "Functionality having been established, whether the
6  design has acquired secondary meaning need not be considered." *TrafFix*, 532 U.S. at 24.

   B. <u>Irreparable harm</u>

   The Lanham Act's presumption of irreparable harm under 15 U.S.C. § 1116(a) does not apply because plaintiff has not shown that it is likely to succeed on the merits.  Further, a plaintiff must show that such an injury is "likely in the absence of an injunction," not merely possible. *Winter*, 555 U.S. at 22.  Intangible injuries such as loss of goodwill and reputation must be supported by more than mere speculation.  *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc*., 736 F.3d 1239 (9th Cir. 2013) (reversing a preliminary injunction in the absence of evidence to support irreparable harm).

   TP-Link concedes the speculative nature of the intangible harm at this stage.  *See* ECF No. 6 at 22 ("This *risk* of goodwill loss resulting from Cudy's infringement further tips the balance of hardships in TP-Link's favor.") (emphasis added).  But TP-Link has not submitted any evidence to show current or impending reputational damage, lost customers, or business disruption.  *Id*.  Merely stating that TP-Link "is already suffering irreparable harm to its goodwill and reputation" is not enough. ECF No. 6 at 21; *Am. Passage Media Corp. v. Cass Commc'ns, Inc*., 750 F.2d 1470, 1473 (9th Cir. 1985) (irreparable harm not established by "conclusory" statements "without sufficient support in facts").

   Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with the characterization of injunctive relief as an extraordinary remedy.  *Arcsoft, Inc. v. Cyberlink Corp*., 153 F. Supp. 3d 1057 (N.D. Cal. 2015); *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947 (D. Ariz. 2022); *Concord Music Grp., Inc. v. Anthropic PBC*, No.

---

along with a shiny polished black surface. Often times, raised surface segments intersect at sharp angles forming triangles or other distinct geometric shapes… The overall combination of these distinctive features constitute the "Archer Trade Dress[.]". ECF No. 6 at 1.  Such "combinations" of features exist in a multitude of available routers in the market.

24-CV-03811-EKL, 2025 WL 904333 (N.D. Cal. Mar. 25, 2025) ("A preliminary injunction must be "grounded in evidence,' not based on what harm [plaintiff] 'might suffer.'"). Without more, the court cannot find TP-Link is likely to suffer irreparable harm in the absence of an injunction.

### C. Balance of hardships

The Ninth Circuit's sliding scale approach dictates that when the balance of hardships weighs heavily in the movant's favor, he only needs to demonstrate "serious questions going to the merits." *Cottrell*, 632 F.3d at 1135. The court must weigh the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it. *Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir.1999).

Having found the asserted trade dress contains functional design elements, and is therefore ineligible for trade dress protection, the court declines to find the balance of hardships tip in TP-Link's favor. Moreover, on balance, the potential harm to Cudy from removing its products from the U.S. market prior to a full adjudication of the claims substantially outweighs the speculative harm asserted by TP-Link.

### D. Public interest

Finally, the public interest does not favor granting an injunction. Although the public has an interest in avoiding confusion, there is a prevailing interest in preserving access to functional product designs and maintaining a reasonable competitive marketplace. *See TrafFix*, 532 U.S. at 29.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Empowered Products, LLC's motion for a preliminary injunction (ECF No. 6) be, and the same hereby is, DENIED.

IT IS FUTHER ORDERED that Cudy's motion to deem four volumes of the appendix to Cudy's opposition timely filed (ECF No. 34) be, and the same hereby is, GRANTED.

. . .

. . .

. . .

1   IT IS FURTHER ORDERED that the stipulation extending deadlines for briefings (ECF No. 28) be, and the same hereby is, GRANTED.

   DATED May 21, 2025.

                  _____
                  UNITED STATES DISTRICT JUDGE