**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

TP-Link Systems, Inc.

Plaintiff,

v.

Shenzhen Cudy Technology Co.,

Defendant.

Case No.: 2:25-cv-00057-JCM-BNW

**ORDER**

Before this Court is Plaintiff TP-Link Systems' motion for sanctions. ECF No. 136. Defendant Shenzhen Cudy Technology (Cudy) opposed and TP-Link replied. ECF Nos. 141, 146. Cudy filed a sur-reply at ECF No. 159. Supplements were also filed by both parties. ECF Nos. 168, 171, 175.

In addition, Cudy filed a motion to lift the stay of the proceedings. ECF No. 162. TP-Link opposed and Cudy replied. ECF Nos. 173, 177.

As explained in further detail below, this Court will impose a mandatory adverse inference instruction as a sanction for Cudy's conduct. The instruction will direct the jury to presume that the information Cudy lied about was unfavorable to Cudy on the question of intent. Lastly, this Court lifts the stay because it was imposed pending resolution of the motion for sanctions, which has now been resolved.

The parties are familiar with the arguments. Therefore, this Court does not repeat them here and instead addresses them as necessary in the analysis below.

//

//

//

## I. Background

TP-Link alleges Cudy has deliberately infringed its trade dress and engaged in unfair competition by designing and marketing wireless networking products that mimic the distinctive image and appearance of certain TP-Link products.

As relevant to this order, Cudy identified Jianzhong Yang as the products' designer in response to TP-Link's interrogatories. In addition, Cudy represented that Andy Chen (Cudy's CEO) and an employee of Cudy's participated in the design process with Mr. Yang. ECF No. 81-1 at 3-4. Despite these assertions, Cudy produced no documents supporting its interrogatory responses.

After meeting and conferring regarding the absence of supporting documentation regarding this relationship, TP-Link moved to compel production of documents. ECF No. 80. In opposing the motion, Cudy represented that Mr. Yang was a freelance designer and that any communications with him occurred only by telephone or during in-person meetings. ECF No. 89 at 3. In turn, it represented that no written communications existed. *Id* at 6. To support these representations, Cudy submitted sworn declarations under penalty of perjury from both CEO Andy Chen and Zheng ("Ken") Chen. ECF Nos. 89-1 and 89-2.

Andy Chen confirmed that Mr. Yang would "bring various design options for [their] consideration" but that he "did not recall communicating with Mr. Yang other than in person." ECF No. 89-2. Similarly, Ken Chen declared that he was the primary point of contact for Mr. Yang and helped arrange meetings in person for Andy Chen and another Cudy employee. Ken Chen further explained that he communicated with Mr. Yang by phone or in person and that, at Mr. Yang's request, he did not communicate electronically with him. ECF No. 89-1.

This Court, surprised at the absence of any communications, ordered that an e-discovery vendor investigate further. ECF No. 98. Following that order, TP-Link retained a law firm in

China, which discovered that Mr. Yang was not a freelance designer at all, but rather the founder of a brick-and-mortar design firm. ECF No. 136 at 6. In turn, TP-Link disclosed this information to Cudy. *Id*. at 7. Shortly thereafter, Cudy's counsel moved to withdraw as counsel citing Rule 3.3(a)(3) of the Nevada Rules of Professional Conduct, which prohibits offering materially false evidence. ECF No. 103.

After new counsel appeared, Cudy acknowledged that the prior discovery responses were "inaccurate" and that Mr. Yang was not, in fact, the designer of the accused products. ECF No. 135-8 at 12. Instead, Cudy identified Mr. Guan as the actual designer and explained that its CEO, Andy Chen, and Ken Chen worked with him to develop the accused products. *Id*.

## I. Legal Standard

A court has inherent authority to sanction litigation conduct that abuses the judicial process, including the authority to dismiss an action. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). Where a rule or statute is adequate to address the misconduct, a court ordinarily should rely on that provision rather than its inherent power. *Id*.

Courts may dismiss a case when "a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995). Due process concerns further require a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression "threaten[s] to interfere with the rightful decision of the case." *Id*. (citing *Wyle v. R.J. Reynolds Indus., Inc*., 709 F.2d 585, 591 (9th Cir.1983).

In determining whether dismissal is the appropriate remedy, courts must utilize the following five-factor test: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic

sanctions. *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004). The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a dismissal sanction. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). Thus the key factors are prejudice and availability of lesser sanctions. *Id*.

Sanctions under the court's inherent power requires a finding that the sanctioned party acted in bad faith or engaged in conduct tantamount to bad faith. *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "Upon a finding of bad faith, courts can levy an assortment of sanctions under their inherent power, including monetary awards, attorneys' fees, adverse inference jury instructions, and even dismissal of claims..." *Addison v. Monarch & Assocs., Inc.*, No. 514CV00358GWJEMX, 2017 WL 10562596 *2 (C.D. Cal. May 8, 2017), report and recommendation adopted, No. EDCV 14-358-GW(CWX), 2017 WL 10651147 * 2 (C.D. Cal. June 5, 2017); see also *Nat'l Prods. Inc. v. Innovative Intelligent Prods. LLC*, No. 2:20-CV-00428-DGE, 2026 WL 100721 (W.D. Wash. Jan. 14, 2026).

## II. Analysis

Here, the interrogatory responses were not in response to a court order, so Rule 37(b) is inapplicable. Likewise, the declarations submitted in opposition to the motion to compel are not encompassed by Rule 37(b). As a result, this Court addresses this motion under its inherent authority.

//

//

//

//

//

//

**A. Bad faith**

This Court finds by clear and convincing evidence[1] that Cudy acted in bad faith.[2] *Englebrick v. Worthington Indus., Inc.*, 944 F. Supp. 2d 899, 909 (C.D. Cal. 2013) ("Bad faith may be found when a party 'provid[es] false or incomplete information ... in response to a discovery request.' "); *see also Newman v. Brandon*, No. 1:10–CV–00687 AWI JL, 2012 WL 4933478, at *5 (E.D. Cal. Oct. 16, 2012) (plaintiff acted willfully and in bad faith in submitting falsified declarations in connection with a motion for summary judgment).

From the outset of discovery through the briefing and resolution of the motion to compel, Cudy advanced a false narrative that Mr. Yang was the designer of the relevant products, that no documentary or electronic communications concerning his work existed, and that any communications occurred exclusively by telephone or in person. That narrative was reinforced by sworn declarations from both the company's CEO and another employee, evincing the need for coordination between senior management and at least one subordinate employee.

The truth did not emerge through Cudy's voluntary disclosures. Instead, it required TP-Link to file a motion to compel—which Cudy opposed by repeating the same false narrative—and, ultimately, to retain an investigative firm in China to expose the falsity of Cudy's representations. Only when confronted with the information the investigation revealed did Cudy

---

[1] It is not clear that Plaintiff must meet such a high standard of proof. Nevertheless, it is met here. *See Lahiri v. Universal Music & Video Distrib. Corp*., 606 F.3d 1216, 1219 (9th Cir.2010) (declining to resolve burden of proof issue because clear and convincing evidence supported the district court's bad faith finding)

[2] This Court notes that the record does not reflect misconduct by Cudy beyond the conduct addressed in this order.

abandon its prior position and acknowledge that its earlier discovery responses were "inaccurate." [3]

In turn, Cudy revealed that the accused products were in fact designed by Mr. Zhenxuan Guan. At the time Mr. Guan contracted with Cudy to design the accused products, he was working for TP-Link China, with which Plaintiff TP-Link was then affiliated.[4] Thus, this information bears on whether Cudy's design of the accused products drew on Mr. Guan's access to TP-Link's trade dress rather than resulting from independent creation. As explained in Section III.D below, the designer's identity is relevant to both secondary meaning and likelihood of confusion—elements TP-Link must prove. Disclosing it would therefore have supplied TP-Link with evidence relevant to those elements.

Of note, this Court is not persuaded by the suggestion that Cudy's CEO, Andy Chen, did not appreciate the importance of providing "accurate" information. ECF No. 143 at 8. The framing of that explanation understates what occurred. Cudy did not provide “inaccurate” information; it provided false information and did so under oath. The duty to be truthful is fundamental to the judicial system, which cannot function unless courts and opposing parties can rely on sworn statements. Even crediting Andy Chen's position, which this Court does not, a party who submits false declarations undermines that system whether or not it appreciated the gravity of doing so.

//

[3] Although Cudy represents that it intended to correct its prior discovery responses voluntarily, the record does not support that assertion. In any event, that representation does little to mitigate the seriousness of the misconduct. Cudy's obligation was to provide truthful and complete discovery responses from the outset, not after months of advancing a false narrative and opposing a motion to compel with sworn declarations that were false.

[4] It appears the accused products can be traced to four contracts between Mr. Guan and Cudy between 2020 and 2023. ECF No. 144-2. It appears that during portions of that time, TP Link and TP-Link China operated as a single entity. ECF 143 at 3 n. 4.

**B. The public's interest in the expeditious resolution of litigation**

The public has an "overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *Allen v. Bayer Corp. (In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*), 460 F.3d 1217, 1227 (9th Cir. 2006). Cudy's lies have resulted in the need for additional (expensive) litigation and hindered the Court's ability to move this case towards disposition. As noted, however, it is not among the factors that drive the analysis.

**C. The Court's need to manage its dockets**

As mentioned above, Cudy's conduct resulted in the need for protracted litigation. In turn, this Court has been required to expend considerable time and resources that could have been allocated towards other matters on this Court's docket. Like the first factor, it is not decisive here.

**D. The risk of prejudice to TP-Link**

To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products. *Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir.1998).

"Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir.1999).

"Likelihood of confusion in the trade dress context is evaluated by reference to the same factors used in the ordinary trademark context[:] strength of the trade dress, similarity between plaintiff's and defendant's trade dress, evidence of actual confusion, marketing channels used,

type of goods and likely degree of purchaser care, and the defendant's intent in selecting its trade dress." *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (citing *Vision Sports v. Melville Corp*., 888 F.2d 609, 616 (9th Cir. 1989)).

Who designed the accused products, where that person worked during the relevant time-period, and what that person did or was directed to do bears directly on the issue of intent. In turn, that information may supply relevant evidence of both secondary meaning and likelihood of confusion. The designer's identity was therefore not an "oblique" matter touching only "a limited subset" of issues in the case. ECF No. 143 at 7. Had Cudy's concealment succeeded, TP-Link would have been left without the ability to develop the relationship between Mr. Guan and China-based TP-Link during the relevant period, or to pursue discovery on that relationship. That the information ultimately surfaced does not diminish the threat Cudy's conduct posed: by concealing the designer's identity, Cudy threatened to interfere with the rightful decision of the case. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

This Court acknowledges that TP-Link now has the information. But obtaining it required protracted (and costly) litigation and has resulted in appreciable delay.

**E. Public policy favoring disposition of cases on their merits**

This factor reflects the strong policy favoring resolution of cases on their merits. That policy weighs against sanctions that end a case without reaching its merits, and it counsels the Court, where possible, to select a sanction that addresses the misconduct while leaving the merits to be decided. As explained below, this Court imposes a sanction, which is short of dismissal, that addresses Cudy's misconduct while allowing the case to be tried on its merits.

**F. Less Drastic Alternatives**

Cudy's conduct was deliberate and could have deprived TP-Link of evidence relevant to the merits of the case. But dismissing the case is a remedy of last resort, available only where no

lesser sanction can address the harm the misconduct caused. That condition is not met here.[5] However serious Cudy's conduct, the harm it threatened can be met by a sanction short of ending the case, and the availability of that lesser sanction forecloses the terminating sanction TP-Link seeks.

That sanction is a mandatory adverse inference instruction requiring the jury to presume that the concealed fact was unfavorable to Cudy on the question of intent. In selecting this sanction, this Court takes into account that TP-Link now knows who designed the accused products and can develop the evidence bearing on intent. The conduct, though deliberate and in bad faith, did not ultimately deprive TP-Link of the ability to prove its case. Dismissal is therefore not necessary to remedy Cudy's misconduct. A sanction that accounts for the misconduct, rather than one that ends the case, is sufficient. It still permits the case to proceed to a decision on the merits while ensuring the jury may account for Cudy's conduct.

This Court has also considered whether a *permissive* adverse inference instruction would suffice as a lesser sanction and concludes it would not. TP-Link will be able to examine Andy Chen and Ken Chen at trial, and it is already entitled to an instruction permitting the jury to weigh their credibility, including any explanation they may provide as to why they lied and why it does not bear on Cudy's intent. A permissive inference telling the jury it *may* consider Cudy's concealment would add little to those existing tools. It would largely duplicate the credibility

---

[5] Cudy points to alleged misconduct by TP-Link in asking this Court to consider whether and what sanctions should be imposed. Cudy cites to decisions in which courts have weighed the conduct of the party seeking sanctions in deciding whether dismissal is warranted on the theory that a movant with unclean hands is a poor candidate for the most severe remedy. But, at least as it concerns this case, TP-Link's alleged conduct, if it occurred, is not a defense to Cudy's. That is, a party does not excuse its own false narrative by pointing to the opposing party's misconduct. If Cudy believes TP-Link has engaged in sanctionable conduct, it may raise that conduct in an appropriate motion, and this Court will address it on its own terms.

instruction and would therefore impose little consequence for Cudy's deliberate, bad-faith conduct.

A mandatory inference instead directs the jury to presume that the information Cudy lied about was unfavorable to Cudy on the question of intent. That is a sanction commensurate with Cudy's conduct, and it is not duplicative of the credibility jury instructions TP-Link would receive regardless.

Cudy correctly observes that adverse inference instructions are often imposed for the spoliation of evidence. But Cudy identifies no authority (and this Court has found none) that would preclude this Court from imposing an adverse inference instruction under its inherent authority based on the conduct at issue here. To the contrary, several courts (*see supra*) have found such remedy lies within the court's inherent authority. The availability of a lesser sanction in the form of an adverse inference instruction is what makes dismissal inappropriate here. Were this Court to credit Cudy's suggestion that this Court cannot impose an adverse inference instruction, it would be left with deliberate, bad-faith misconduct and no intermediate remedy—a circumstance in which a terminating sanction may become appropriate. This Court declines to reach that result and imposes the lesser sanction instead.

The precise language of the instruction will be settled with the jury instructions. This Court directs the parties to include a proposed instruction consistent with this order in their joint pretrial order.

Next, a mandatory adverse inference instruction does not address the separate harm the lies caused: the expense TP-Link incurred litigating to uncover information Cudy was obligated to provide. That harm is properly remedied by requiring Cudy to bear the reasonable attorney's fees and costs TP-Link incurred as a result of the conduct at issue. A court's inherent authority to sanction bad-faith conduct includes the power to shift to the offending party the attorney's fees

the opposing party incurred as a result of that conduct. *Chambers*, 501 U.S. at 45–46. Such a fee award is compensatory rather than punitive and is limited to the fees the injured party would not have incurred but for the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017). This Court will therefore award TP-Link the reasonable fees and costs it incurred by litigating the motion to compel and establishing the designer's true identity.

This Court imposes both sanctions because each addresses a harm the other does not: the mandatory adverse inference instruction sanctions the potential Cudy's lies had to preclude a finding on the merits, and the fee award compensates TP-Link for the expense of uncovering the truth. Neither sanction alone addresses both harms, and together they remain short of the terminating sanction this Court has declined to impose.

## III. Conclusion

**IT IS THEREFORE ORDERED** that Plaintiff's motion for sanctions (ECF No. 136) is **GRANTED in part and DENIED in part** consistent with this order.

**IT IS FURTHER ORDERED** that the parties meet and confer within 14 days of this order to address the issue of attorney fees and costs.

**IT IS FURTHER ORDERED** that the Clerk of Court ungavel ECF No. 134.

**IT IS FURTHER ORDERED** that the stay of discovery is lifted.

**IT IS FURTHER ORDERED** that Cudy's motion at ECF No. 162 is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court ungavel ECF No. 166.

**IT IS FURTHER ORDERED** that, consistent with footnote 5 above, Cudy may file any motion it deems appropriate.

DATED: August 12, 2026

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE